THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON ROBINSON, Defendant-Appellant.

First District (3rd Division)   No. 62726

Opinion filed March 16, 1977.

James J. Doherty, Public Defender, of Chicago (Daniel E. Radakovich and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and Salvatore R. Marzullo, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

Defendant, Leon Robinson, was indicted for aggravated battery and attempt murder. A jury acquitted Robinson of attempt murder but found him guilty of aggravated battery. He was sentenced to not less than 3 nor more than 10 years.

The victim, Lester Brown, testified that he was leaving a tavern when the defendant, whom Brown knew as "Coco," beckoned to him. The defendant came up behind Brown and slit his throat with a razor. Brown ran from the bar to a nearby medical center where he informed Police Officers Majcen and Tash that "Coco" cut him. The officers took Brown to a hospital for treatment where Brown told Police Investigator Lawrence that Robinson cut him with a pink-handled, barbershop razor.

On direct examination, the State's Attorney asked Brown four times if

he saw "Coco" in the courtroom. Brown responded "no" the first three times. After the third inquiry, the State's Attorney told Brown that he was looking in the jury box and instead he should be looking around the courtroom. After receiving that suggestion, Brown located the defendant in the courtroom and identified him as the person who slashed his throat.

Brown denied being alcoholic or drinking heavily, and stated that he last worked in 1969, 5 years prior to the incident. He denied being mentally retarded, but admitted he had been treated for mental retardation. Brown said he had been receiving public aid for the preceding 10 years.

Investigator Lawrence testified that on the day of the incident he and his partner went to the hospital emergency room. After Brown described the incident and accused "Coco," Lawrence and his partner went to Robinson's residence, where they found defendant holding a pearl-like, pink-handled, straight razor. Investigator Lawrence identified the razor at trial as the one he took when he arrested Robinson.

The hospital's surgical resident, Dr. Shah, testified that he treated Brown for a neck wound requiring about 30 sutures. Dr. Shah said that, based on Brown's pulse, heartbeat and walk, Brown was not intoxicated when he arrived at the hospital.

Defendant raises four issues: (i) Brown's testimony was inadmissible because he was an incompetent witness; (ii) the trial court improperly restricted defense counsel's cross-examination of Brown; (iii) the trial court allowed inadmissible hearsay; (iv) the sentence was excessive.

The State maintains that Robinson failed to preserve the first issue for review by omitting it from his motion for a new trial. (Ill. Rev. Stat. 1973, ch. 38, par. 116—1(c); *People v. Nelson* (1968), 41 Ill. 2d 364, 243 N.E.2d 225; *People v. Dixon* (1973), 10 Ill. App. 3d 1038, 295 N.E.2d 556.) Alternatively, the State maintains that Brown was competent to testify, and that his testimony demonstrated his ability to observe, recollect and communicate the incident to the jury.

■■ Although the defendant failed to preserve the question of Brown's competence, this court has discretion to review the admissibility of his crucial and damaging testimony. Ill. Rev. Stat. 1973, ch. 110A, par. 615(a); see *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617; *People v. Gorsuch* (1974), 19 Ill. App. 3d 60, 310 N.E.2d 695.

Brown showed signs of confusion in making a courtroom identification of the defendant, but he eventually located and positively identified the defendant in the courtroom. Brown's account of the attack upon him was corroborated by Investigator Lawrence's testimony describing the razor Robinson was holding when accosted by the police.

■■ The relevant test of competence is set forth in *People v. Dixon*

(1961), 22 Ill. 2d 513, 515, 177 N.E.2d 224, *cert. denied,* 368 U.S. 1003, 7 L. Ed. 2d 542, 82 S. Ct. 637, where the court stated:

> " * * * [O]ne mentally affected or ill is not incompetent if he understands the nature of an oath, and has sufficient mental power to give a correct account of what he has seen and heard." (22 Ill. 2d 513, 515.)

The trial court was in the best position to ascertain Brown's competence from his appearance and conduct at trial. (*People v. Gorsuch* (1974), 19 Ill. App. 3d 60, 310 N.E.2d 695.) The record does not indicate the court abused its discretion in allowing Brown to testify.

■■ Defendant also argues that the circuit court improperly restricted Brown's impeachment by forbidding the use of Brown's hospital medical records on cross-examination. The trial judge stated that the defense could call witnesses who had examined Brown at the hospital to present evidence of Brown's mental retardation, but ruled institutional records alone did not establish that he was mentally retarded. At no time during the trial did defendant call witnesses or present other evidence regarding Brown's mental capacity. Hospitalization itself did not reflect on Brown's competence or credibility; at most it established that he had been treated for mental retardation, a fact Brown conceded. The restriction on Brown's cross-examination was not improper. *People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569.

■■ Defendant maintains that the testimony of Officer Majcen and Investigator Lawrence regarding Brown's statement that "Coco" had cut him was inadmissible hearsay. The State responds that the evidence was admissible under the excited utterance exception to the hearsay rule. In *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804, the court reviewed three elements needed to qualify a statement as an excited utterance exception to the hearsay rule:

> "(1) [A]n occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." (22 Ill. 2d 175, 181.)

Defendant does not question the first and third elements, but disputes whether there was insufficient time for Brown to fabricate his statement to the police officers. Defendant estimates that about 30 minutes elapsed between the slashing and Brown's conversation with Officer Majcen, and at least 1 hour between the incident and Brown's interrogation by Investigator Lawrence. In this case, it was difficult to interview Brown, because the blood dripping down his throat was choking him. Under circumstances where Brown's primary concern must have been to get his throat sewn up rather than falsely implicating Robinson, the passage of 30

minutes to an hour did not prevent the application of the excited utterance exception to the hearsay rule.

■■ Alternatively, the State argues it was not error to permit the police officers to testify regarding conversations they had with Brown, after Brown had already testified and had been subject to cross-examination about the same conversations. The hearsay rule does not apply if the same matter has been competently testified to by the out-of-court asserter himself. (*People v. Hoffmann* (1970), 124 Ill. App. 2d 192, 260 N.E.2d 351.) Brown, the out-of-court asserter, had already testified about his statements to the police officers, and the defense could have impeached Brown through cross-examination. As in *Hoffman*, the testimony elicited from the police officers duplicated Brown's testimony that "Coco" attacked him. The officers presented no new evidence, and the defendant could have tested the officers' account by cross-examining Brown. See McCormick, Evidence § 251, at 602-603 (2d ed. 1972).

■■ Defendant was found guilty of aggravated battery, a Class 3 felony, for which the maximum permissible term is 10 years. (Ill. Rev. Stat. 1973, ch. 38, pars. 12—4(d), 1005—8—1(b)(4).) Where a sentence is within the limits prescribed by the legislature, a reviewing court should not disturb it unless it constitutes a great departure from the Illinois constitutional requirement that penalties shall be proportioned to the nature of the offense. (*People v. Richardson* (1969), 43 Ill. 2d 318, 253 N.E.2d 420; *People v. Smith* (1958), 14 Ill. 2d 95, 150 N.E.2d 815; *People v. Gray* (1976), 40 Ill. App. 3d 52, 351 N.E.2d 339.) The trial judge is in the best position to determine an appropriate sentence because of his presence at the trial and at the hearing in aggravation and mitigation. (*People v. McCullough* (1970), 45 Ill. 2d 305, 259 N.E.2d 19; *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) Absent an abuse of discretion in sentencing, this court should not substitute its judgment for that of the trial court. (*People v. Guinnip* (1976), 39 Ill. App. 3d 687, 350 N.E.2d 246; *People v. Gama* (1975), 33 Ill. App. 3d 869, 338 N.E.2d 583.) Defendant's past criminal record and his violent conduct in slashing a man's throat sufficiently justified the sentence imposed, and we do not find it excessive. *People v. Saiken* (1971), 49 Ill. 2d 504, 275 N.E.2d 381, *cert. denied*, 405 U.S. 1066, 31 L. Ed. 796, 92 S. Ct. 1499.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.