THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID ALLEN HAYES, Defendant-Appellant.

First District (5th Division)   No. 77-1489

Opinion filed June 30, 1978.—Rehearing denied August 14, 1978.

Ralph Ruebner and Gary Jay Ravitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendants David Hayes, Edward Reed and Eddie Birk were indicted for the offenses of rape and armed robbery. (Ill. Rev. Stat. 1971, ch. 38, pars. 11—1, 18—2.) Reed was also charged with deviate sexual assault. (Ill. Rev. Stat. 1971, ch. 38, par. 11—3.) All defendants originally pleaded not guilty. Reed and Birk later pleaded guilty to all charges, except that Reed's plea included a reduced charge of robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 18—1.) They were then sentenced to prison terms of 4 to 8 and 5 to 15 years respectively.[1] Following a jury trial, Hayes was found guilty of rape and sentenced to 7 to 30 years in prison. On appeal he contends that his sentence was excessive because (1) it was based upon an unproven allegation of perjury and, (2) it was a punishment for proceeding to trial.

We affirm.

At trial the prosecution called Gloria Echoles as its first witness. She testified that at approximately 10 p.m. on December 22, 1972, she left her apartment on West 72nd Street in order to purchase a package of cigarettes from a nearby tavern. While waiting for traffic to clear she was approached by two strangers. She later learned that their names were Hayes and Reed. Reed pointed a gun at her and told her to continue walking. Hayes took her by the arm and together the two men walked her west on 72nd Street to an alley where two other men later identified as Birk and Norris were waiting. She was forced to pull down her pants with defendant holding her arm and Reed brandishing the gun. She offered the men her coin purse, which was taken by Reed. She was then led to an abandoned two-story building nearby. The men forced the door, entered

---

[1] Reed received 4 to 8 years for each count of rape, robbery and deviate sexual assault. Birk received 5 to 15 years on each count of rape and armed robbery. Their respective sentences were to run concurrently.

and took her to the front of the first floor. There, Norris emptied the five or six dollars from her coin purse onto the floor. Reed ordered her to disrobe while defendant continued to hold her arm. Reed then forced her to have intercourse with him and slapped her a number of times as she protested.

She was then taken to the second floor where defendant and Birk had intercourse with her against her will. She then heard a loud noise that sounded like a gunshot and began screaming. The four men ran from the scene and she heard someone order everyone to come downstairs. She screamed, "Don't shoot, I'm up here. She then descended to the first floor, falling down part of the stairway, and was met by a police officer who placed a coat over her shoulders. The police aided her in collecting her belongings from the building and took her home. She was then taken to the hospital for treatment and to the police station. She observed defendant, Birk and Norris at the police station and while seated on a bench Reed entered, causing her to cry out.

Chicago police officers Sidney Sharif and Wilbur Jamison each testified that at approximately 10:30 p.m. on December 22, 1972, they were on patrol when a radio broadcast directed them to the scene. At 1216 West 72nd Place they observed tracks in the snow leading up to the rear door of an abandoned building. They attempted to enter but found the door secured from the inside. As the other responding cars departed, Sharif and Jamison spoke to an unidentified woman, returned to the squad car and drove to the front of the building. They heard a scream and Sharif ran through an adjacent gangway to the rear of the building. He observed Reed emerge and ordered him to halt. When Reed disregarded an order to remove his hand from his pocket, Sharif fired and he fled. Defendant then exited the building and when ordered to halt, ran between two nearby buildings. Sharif alerted his partner to the fleeing suspect and entered the building. As Officer Jamison searched between the buildings, the same or another unknown person approached him and pointed toward a nearby gangway. There he discovered defendant hiding, and arrested him.

Sharif, having entered the building to investigate the screams, heard Echoles yell that her assailants had a gun. Nude and crying, she stumbled down the stairs. The officers placed a coat over her, helped to gather her things, and walked her home.

Defendant, testifying in his own behalf, stated that he had been standing by a mailbox on 72nd Street and Racine with Birk and Reed for about an hour and a half before seeing Echoles. As she was waiting to cross the street, Reed approached her and asked where she was going. Together Reed and Echoles crossed the street. They then returned to

where Birk and defendant were standing. As they passed the two men, Reed told them to follow. Defendant and Birk then followed Reed and Echoles through the alley to the abandoned building.

Defendant testified that after the group entered, Echoles lay on a couch on the first floor. Reed had intercourse with her and when they were finished she remained on the couch and invited defendant to have intercourse with her, which he did. When they were through, he called Birk who also had intercourse with her. The fourth man, Norris, declined a subsequent offer of intercourse.

Defendant stated that as Reed was leaving he said that he heard someone at the back door, and everyone began running. Defendant heard someone say "Hold it", followed by gunshots. Reed ran out of the front door and defendant jumped out of a window and ran into a gangway where he remained until seeing the police. Defendant stated that at no time was Echoles slapped or threatened, nor was money taken from her. He explained that the contents of her purse fell on the floor as she arose from the couch. He also stated that she never resisted anyone either verbally or physically and that in his opinion she acted voluntarily.

After closing arguments, the jury found defendant guilty of rape and not guilty of armed robbery.

At the hearing held for sentencing, defendant's attorney indicated that all of the defendants were equally culpable and that neither the facts of the case nor the defendant's past justified a harsher sentence than given his co-defendants.

The following colloquy then took place between the trial judge and defendant's attorney, Mr. Holt:

"THE COURT: You think there would be anything about the fact your client took the stand and was almost making the woman into a prostitute who had been raped in the street, and lied? Do you think that has nothing to do with it?

It shows me your client hasn't even taken, doesn't even want to sit there, and I never hold it against a Defendant if he sits there and has the State prove his case beyond a reasonable doubt, but I do take it into consideration when a Defendant takes the stand and puts the State's witness on trial, and he shows me he doesn't even have the beginning to feel that he wants to be rehabilitated, and that does bother me, bothers me a great deal.

MR. HOLT: Your Honor, a recent case in the Federal System has held, and I think correctly so, and I think that has always been the law, that that is an impermissible consideration for trial, Judge, in sentencing a Defendant.

\* \* \*

That the fact that the trial Judge believes that the Defendant lied on the witness stand in front of the trier of fact is an impermissible consideration in meting out sentencing.

THE COURT: I'm just saying that there's a difference between your client and the other two gentlemen. That's all I'm saying.

MR. HOLT: Only if Your Honor considers the fact that you believe that he lied. If absent that fact, there's no difference between this Defendant and the other two, except this Defendant elected to have his cause tried before a Jury, which of course would be an impermissible consideration for heightening the penalty also. So, that the things that distinguish David Hayes from the Co-defendants, in my judgment, are two things only. One, that he went to trial and two, that Your Honor believes he may have committed perjury or indeed he lied.

THE COURT: Well, Counsel, do you think the Court should take into consideration he has entered the Criminal Court System in about 1964 as a young man and has been through the Department of Corrections before?

MR. HOLT: I think, Your Honor, that that is a minimal consideration, if any.

* * *

[Y]ou have to also take into consideration the tender age of the Defendant, and it was not my understanding that the contacts with the Juvenile Court could, at some time later, be used in order to heighten adult convictions * * *.

THE COURT: I have to look at this man, who is still a very young man, over, and what his so-called record has been up to this particular period of time.

Now, as I see it, from reading the pre-sentence [sic], it's not very good.[2]

* * *

In light of the pre-sentence report and in light of the fact that I really haven't seen any change as far as the Defendant is concerned, as far as his way of life, since he originally got in trouble with the Court a long time ago, the Defendant will be sentenced to the Illinois State Penitentiary for a minimum of seven years to a maximum of 30 years, and the reason why the top is so high, I reallly [sic] have grave reservations about this Defendant ever being rehabilitated in the course of his life. He just has not

---

[2] In addition to numerous contacts with police as a juvenile, the defendant's record shows several arrests as an adult including a misdemeanor conviction for the unlawful use of a weapon. At the time of trial, there were three charges pending against him.

learned to grow up. He believes, as far as the Court feels, that the way you do it is push people around in the street, as he did do to the lady in this particular case that I had before me, and he has done since he's been a young boy. Apparently, nobody has been able to reach him."

OPINION

The sole issue on this appeal is whether the 7 to 30 year sentence imposed on defendant for his conviction for rape is excessive in light of the 4 to 8 and 5 to 15 year sentences received by his co-defendants, Reed and Birk. Defendant urges us to reduce his sentence since he contends that the heavier sentence he received was punishment for exercising his constitutional right to proceed to trial and was further based on the judge's belief that he committed perjury on the stand.

At the outset we note that the trial court has a superior opportunity in the course of a trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed on a defendant. (*People v. Fox* (1971), 48 Ill. 2d 239, 269 N.E.2d 720; *People v. Larsen* (1977), 47 Ill. App. 3d 9, 361 N.E.2d 713.) For this reason we, as the reviewing court, are reluctant to disturb the sentence imposed by a trial judge, unless a clear abuse of discretion can be shown. *People v. Robinson* (1977), 47 Ill. App. 3d 48, 361 N.E.2d 759; *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.

■■ In the instant case, we are unable to conclude that the trial judge abused his discretion. Although a sentence imposed on a defendant as a punishment because he exercised his right to trial by jury is a constitutional deprivation (*People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 689), mere disparity between the sentences given to a defendant who stands trial and another who pleads guilty does not of itself warrant the conclusion that the former is being punished for proceeding to trial. Rather, the reasons given for the sentence are controlling. *People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685; *People v. Morgan* (1974), 19 Ill. App. 3d 247, 311 N.E.2d 355; *People v. Lynch* (1973), 14 Ill. App. 3d 568, 302 N.E.2d 688.

■■ In the instant case, the trial judge stated explicitly that he considered the fact that defendant, unlike his co-defendants, took the stand and lied. The judge expressly considered defendant's past criminal history as reflected by the presentence report. The trial judge felt that these factors demonstrated a poor potential for rehabilitation. Indicators of a defendant's potential for rehabilitation such as his age, veracity, demeanor and past history, as well as the nature of the offense involved are proper criteria for a trial judge to consider in meting out a sentence.

*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 884; *People v. Walker* (1975), 29 Ill. App. 3d 838, 331 N.E.2d 267; *People v. Morgan* (1974), 19 Ill. App. 3d 247, 311 N.E.2d 355.

■■ Although defendant argues that the trial judge's consideration of his lying on the stand is tantamount to punishing him for perjury which would require a separate indictment and conviction, we believe that the trial judge properly used this factor as an indication of his potential for rehabilitation. We are cognizant that we must look beyond the mere recitation of the words "potential for rehabilitation" in order to determine what the trial judge actually considered in imposing a sentence. In the instant case, however, we are convinced that the trial judge was concerned with defendant's rehabilitative potential which was lessened in part by the fact that he took the stand and lied. In *People v. Jones* (1972), 52 Ill. 2d 247, 249-50, 287 N.E.2d 680, 681, where the trial judge commented that defendant was "prone to perjury," the court said:

> "We do not read into the remarks of the trial judge any intention to sentence the defendant for perjury. Realistically, it is impossible for a judge, in determining what sentence should be imposed, to erase from his mind the testimony of the defendant. The impact of that testimony upon the sentencing judge can hardly be said to be irrelevant to an appraisal of the defendant's character and his prospects of rehabilitation. We cannot appraise the degree of comparative responsibility of his co-defendants who acknowledged their guilt, or their prospects for rehabilitation."

■■ Finally, we note that the 7 to 30 year sentence defendant received was well within the statutory limits for rape which is a Class 1 felony providing for a minimum term of four years to a maximum of any term in excess of four years. (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—1(c)(2), 1005—8—1(b)(2).) We cannot say that the penalty here is disproportionate to the nature of the offense involved (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644), or far in excess of those sentences received by his co-defendants.

For the foregoing reasons, we will not interfere with the sentence imposed on defendant. The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.