THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH D. GENOVESE, Defendant-Appellant.

Second District No. 77-274

Opinion filed November 15, 1978.

Mary Robinson and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Jan Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
The defendant was convicted of armed robbery and aggravated battery after a jury trial and sentenced to concurrent terms of 4 to 9 and 2 to 6 years. He appeals, contending that (1) the trial court erred in failing to suppress his confession, since the confession was induced by "implied promises" by

the police related to the defendant by his mother; (2) that the trial court erred in refusing to instruct the jury that to sustain the charge of armed robbery, it was necessary for the jury to find that the defendant acted knowingly and intelligently, and that a person who was under the influence of drugs so as to be incapable of acting knowingly and intelligently was not responsible for his conduct and, (3) that the trial court improperly based the sentence which was imposed on the defendant on the court's conclusion that the defendant had committed perjury. We affirm.

At 1 a.m. on July 1, 1976, Thomas Parker was working at a Martin gas station when he observed two individuals walk around the back of the building to the area where Parker was sitting. One of the pair asked for a carton of cigarettes. Parker got the cigarettes and told the two that the price was $5. The taller of the two then reached into his back pocket to pull out his wallet but instead lifted his shirt, pulled out a revolver and said, "Will this pay for it?" Parker replied that it would and handed over the money that he had in his pockets. The taller robber told Parker to lie down on the floor. Parker realized that the robber was about to hit him and put his hands over his head and told the individual, "Please don't put me out." The tall robber replied, "Either I am going to hit you or I'm going to shoot you," and then hit Parker four or five times. Parker, who had gained experience with persons on drugs while working as a volunteer counselor, testified that he did not think that the robbers were under the influence of drugs. He was not able to make a positive identification of the offenders.

Christopher Lang, a 16-year-old, testified that he had attended a party with the defendant, Kenneth Knoth, Jim Cooney and Long Lauc Lao, on the evening of June 30, 1976. Lang stated that he, the defendant and Knoth discussed the commission of an armed robbery some two weeks before July 1, 1976. After the party, the five went to the Martin Oil Gas Station in a stolen Buick Electra, at about 1 a.m. on July 1, 1976. One of the others handed the gun to the defendant and Knoth told Lang and the defendant to go inside the gas station. It was Lang who asked Parker for a carton of cigarettes, and the defendant who produced the gun and subsequently hit Parker with it. The two then returned to the car and the group left for Louisiana. Lang had seen the defendant take "angel dust" on the evening in question. Although Lang admitted that he had previously given statements to the police which were at variance to his testimony at trial, he had pleaded guilty in juvenile court to the offense of armed robbery. He initially refused to give testimony in this case, and only changed his mind after the trial court held him in contempt.

A tape recorded confession which defendant gave to police was admitted into evidence and played for the jury. In it the defendant answered questions concerning the robbery and related the events of June 30 to July 1, 1976, in considerable detail. For example, he recalled that the

carton of cigarettes which he had taken from the service station were Marlboros, that Parker told him the cigarettes cost $5 and that he had responded by producing the gun and asking Parker, "Will this do?" Although the defendant denied that he had threatened to shoot Parker, his confession was in other respects in substantial accord with the testimony of Parker and Lang.

At trial, the defendant testified that he took angel dust composed of cocaine, morphine, heroin and PCP on the evening of the offense and that he had taken the drug every day for two months. He recalled that he left the party in a car with Jim Cooney, Ken Knoth, Chris Lang and Long Lauc Lao and fell asleep in the back seat. He claimed that he was still in the car when he woke up and was told that they were on their way to Louisiana. He asserted that the police had told him what to say when he gave them the taped confession and that he was suffering from drug withdrawal at the time. The defendant's mother also testified that the defendant was suffering from a drug problem and was under the influence of drugs when he gave his confession.

We turn first to the defendant's contention that the trial court erred in failing to suppress his confession. No purpose would be served by setting forth the testimony heard at the hearing on the defendant's suppression motion; a few salient facts will suffice. On August 20, 1976, the defendant was in Connecticut visiting his father, when the police contacted the defendant's mother in Wheeling and advised her of the charges against the defendant. The officers testified that they told the defendant's mother that it would be in the defendant's best interest if he came back to Illinois on his own, instead of being brought back after being arrested by authorities in Connecticut, that "it would not hurt" the defendant to return home and "try to clear this up," and that the defendant would not be harmed in any way. The defendant's mother and two co-workers recalled the conversation differently, asserting in part that the officers told the defendant's mother that the defendant would not be arrested if he came home, and would not have to go to the penitentiary; the defendant's mother then conveyed these assurances to the defendant, who returned from Connecticut, submitted to custody and gave the officers the taped confession the next morning. At the conclusion of the suppression hearing, the trial court indicated that it did not believe the witnesses presented by the defendant regarding alleged representations by the police. On appeal, the defendant argues that promises or implied promises made by the officers to the defendant's mother rendered the defendant's confession involuntary. We disagree.

■■ Defendant has cited *People v. Ruegger* (1975), 32 Ill. App. 3d 765, and *People v. Koesterer* (1976), 44 Ill. App. 3d 468, for the proposition that express or implied promises made to a defendant to induce him to

make a statement can render a statement involuntary. (But see *People v. Wipfler* (1977), 68 Ill. 2d 158.) However, in this case, the officer's remark that it would be in the defendant's best interest to return and "clear up" the charges pending against him were directed not at inducing the defendant to make a statement but rather to procure the defendant's submission to lawful authority. The importance of this distinction is obvious, for although the defendant had a constitutional right to remain silent, he had no similar right to evade arrest on the armed robbery charge. Further, the officer's advisement to the defendant's mother, that it would be better for the defendant to turn himself in voluntarily than to be arrested by authorities in Connecticut, was completely accurate and proper. We note that *Miranda* warnings were administered to the defendant before he gave his confession and the record would support a finding that the defendant voluntarily and knowingly waived his rights before he confessed. Therefore, there was no error in the trial court's denial of the defendant's suppression motion.

The defendant's next contention pertains to the trial court's refusal to give certain instructions to the jury. The defendant sought to have the jury instructed that to sustain the charge of armed robbery and aggravated battery, they had to find that the defendant was acting knowingly and intentionally. The defense also asked that the jury be instructed that a drugged person is criminally responsible for his conduct "unless his drugged condition renders him incapable of acting knowingly or intentionally." These instructions were refused by the trial court, which felt they were not consistent with the defendant's general denial of the commission of the offense. The defendant urges that the refusal to give these instructions constituted reversible error, since intoxication which is sufficient to negate the intent element necessary to support a conviction for armed robbery is a defense to the charge (*People v. White* (1977), 67 Ill. 2d 107), and the defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which the defense is based are inconsistent with the defendant's own testimony. *People v. Ford* (1968), 39 Ill. 2d 318; *People v. Khamis* (1951), 411 Ill. 46.

■■ However, error in refusing to give the instructions tendered by the defendant would not warrant a reversal of his conviction. Error in giving or refusing instructions will not necessarily justify a reversal, when the evidence of the defendant's guilt is so clear and convincing the jury could not reasonably have found him not guilty. *People v. Stewart* (1970), 46 Ill. 2d 125; *People v. Ward* (1965), 32 Ill. 2d 253, *cert. denied* (1966), 384 U.S. 1022, 16 L. Ed. 2d 1026, 86 S. Ct. 1947.

Here the testimony of Parker and Lang, when coupled with the defendant's ability to give a detailed confession more than a month after the event (see *People v. Long* (1975), 30 Ill. App. 3d 815, 819), belied any

claim that the State failed to prove beyond a reasonable doubt that the defendant possessed the requisite intent to commit the offense. In view of the overwhelming evidence of guilt admitted at trial, the jury could not reasonably have found the defendant not guilty, and under the circumstances of this case, error in the refusal to give defense instructions would not justify a reversal of the defendant's conviction. *Cf. People v. White* (1977), 67 Ill. 2d 107.

■■ Finally, the defendant asserts that his high maximum sentence must be reduced since the trial court improperly imposed it, in part because the court was convinced that the defendant committed perjury during the course of proceedings. This assertion is grounded upon certain remarks made by the trial court at the time of sentencing:

> "This Court also is somewhat concerned here with reference to the moral character of this defendant. This defendant, despite, in the Court's opinion, overwhelming evidence, still, * * * lied to this Court. * * * This Court does not feel that the police put the words into his mouth, as he would have me believe.
>
> This Court is convinced that he knows that he participated, and yet the Court has seen no remorse whatsoever from him in this regard."

We do not find that these remarks were improper, or that the trial court erred in considering the defendant's veracity as a factor indicative of his rehabilitative potential. (See *People v. Jones* (1972), 52 Ill. 2d 247; *People v. Hayes* (1978), 62 Ill. App. 3d 360.) "[T]he trial judge is normally in a better position to determine the punishment to be imposed than the courts of review" and absent an abuse of discretion, a sentence imposed by the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Here we find that the trial court did not abuse its sentencing discretion.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

GUILD and NASH, JJ., concur.