No. 90-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

          Plaintiff and Respondent,

     -vs-

COREY HUEBNER,

          Defendant and Appellant.


APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Samuel M. Warren argued; Worden, Thane & Haines,
               Missoula, Montana

          For Respondent:

               Hon. Marc Racicot, Attorney General, Helena, Montana
               Jennifer Anders argued, Assistant Attorney General,
               Helena
               Loren Tucker, County Attorney; Mark David Hoffman,
               Deputy, Virginia City, Montana

          For Amicus Curiae:

               Michael Donahoe, Helena, Montana
               William Boggs argued, Missoula, Montana


                              Submitted:  February 11, 1992

                              Decided:    March 9, 1992

Filed: MAR 9 - 1992

                                        Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Corey Huebner was convicted by a jury in the District Court of the Fifth Judicial District, Madison County, of the misdemeanor charge of wasting game in violation of § 87-3-102, MCA (1989). He appeals. We affirm.

The following issues decide this appeal:

1. Is § 87-3-102, MCA (1989), unconstitutionally vague or overbroad?

2. Did the District Court err by failing to instruct the jury as to criminal intent?

3. Did the District Court impose a penalty contrary to law?

Because of our holdings on these three issues, it is not necessary to discuss the remaining issues raised.

Huebner shot a mountain goat in the Avalanche Lake area of Madison County in the early evening of September 15, 1989. According to him, by the time he was able to retrieve the animal the next day, the meat was not fit for human consumption. This was disputed by other hunters in the area, who testified at trial as witnesses for the State. Huebner took only the head, horns, and cape of the animal and left the rest. He was charged with violation of § 87-3-102, MCA (1989):

> **Waste of fish or game.** It shall be unlawful and a misdemeanor for any person responsible for the death of any game animal of this state, excepting grizzly, black, and brown bear and mountain lion, to detach or remove from the carcass only the head, hide, antlers, tusks, or

2

teeth or any or all of aforesaid parts or to waste any part of any game animal, game bird, or game fish suitable for food or to abandon the carcass of any game animal in the field[.]

After Huebner was tried and convicted by a jury in Madison County Justice Court, he appealed to District Court. A de novo jury trial which began on July 17, 1990, again resulted in a verdict of guilty. Huebner was ordered to serve six months in the Madison County jail, which sentence was suspended upon payment of a $750 fine plus $1,312 in court costs and a $10 surcharge. His hunting and fishing privileges were suspended for thirty months and he was ordered to forfeit the cape and horns of the goat.

I

Is § 87-3-102, MCA (1989), unconstitutionally vague or overbroad?

A statute is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act in accordance therewith. United States v. Powell (1975), 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228. Huebner contends that § 87-3-102, MCA (1989), is unconstitutionally vague because it does not clearly set forth the conduct which is prohibited.

We disagree. Section 87-3-102, MCA (1989), establishes that the wasting of game meat other than grizzly, brown, or black bear or mountain lion is illegal. A person commits "waste" by doing any

3

of the following: (1) removing only the head, hide, antlers, tusks, or teeth of any game animal other than the three trophy animals listed; (2) wasting any part of any game animal, bird, or fish, other than the three trophy animals listed, which is suitable for food; or (3) abandoning in the field the carcass of any game animal other than the three trophy animals listed. The statute gives a person of ordinary intelligence reasonable notice of what is prohibited. We hold that it is not unconstitutionally vague.

Huebner also argues that the statute is unconstitutionally overbroad because it prohibits otherwise legal activities of any hunter or taxidermist who removes specified body parts at any time. This argument is without merit. Under the statute, it is not the removal of the horns, head, or cape that is illegal, but the act of removing only those body parts, without utilizing the rest of the animal. We hold that § 87-3-102, MCA (1989), is not unconstitutionally overbroad.

## II

Did the District Court err by failing to instruct the jury as to criminal intent?

Huebner contends that criminal intent is an essential element of the crime of wasting game and that therefore the District Court erred in not instructing the jury on the necessity of a culpable state of mind. He asserts two theories in support of his position.

4

First, he argues that despite the lack of a mental state requirement in § 87-3-102, MCA (1989), the requirement must be implied because the statute does not meet the requirements for an absolute liability offense. An absolute liability offense is one in which the actor's intent is irrelevant since it is the act itself which constitutes the offense. State v. McDole (1987), 226 Mont. 169, 174, 734 P.2d 683, 686. Section 45-2-104, MCA, provides:

> A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in subsections (33), (37), and (58) of 45-2-101, only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described. [Emphasis added.]

Huebner contends that since the offense of wasting game meat is punishable by a fine that exceeds $500, the offense may not be classed as an absolute liability offense.

Section 45-2-104, MCA, includes two disjunctive requirements for an absolute liability offense. Either requirement can support the elimination of the intent element. We conclude that the second requirement has been met.

To ascertain legislative intent, we look to the language employed and the apparent purpose subserved. State v. Austin (1985), 217 Mont. 265, 268, 704 P.2d 55, 57. The statute prohibiting a person from shooting a game animal and abandoning the meat,

5

or as in this case, removing only those parts suitable for a trophy mount, is obviously intended to preserve game resources for the benefit of the public. Numerous Montana cases have recognized the State's duty to protect public wildlife resources through regulations designed for that purpose. E.g., State v. Jack (1975), 167 Mont. 456, 539 P.2d 726. Hunters are an identifiable group of persons exercising their right to utilize the State's game resources for food and other purposes. They are responsible for knowing the laws pertaining to their sport. We hold that § 87-3-102, MCA (1989), indicates a legislative purpose to impose absolute liability for wasting game meat other than grizzly, brown, or black bear, or mountain lion. Huebner's argument that § 87-3-102, MCA (1989), does not fit the statutory requirements of an absolute liability offense therefore fails.

Huebner's second theory is that all game violations under Title 87, MCA, require proof of mental state, under <u>Austin</u>. That was not this Court's holding in <u>Austin</u>. In that case, this Court held that the spotlighting statute, § 87-3-122, MCA, was unconstitutional because, while it prohibited "spotlighting" in general, it allowed exceptions for landowners, lessees, or their agents which would permit arbitrary and irrational enforcement by law enforcement officers. <u>Austin</u>, 704 P.2d at 59. It has not been argued that § 87-3-102, MCA (1989), contains arbitrary exceptions which render it unconstitutional. Therefore, <u>Austin's</u> analysis does not

6

apply. We hold that the District Court did not err by failing to instruct the jury on criminal intent.

## III

Did the District Court impose a penalty contrary to law?

In addition to a fine and a suspended jail term, the District Court imposed a penalty of forfeiture:

> The defendant, Corey Huebner, shall forfeit to the State of Montana (Department of Fish, Wildlife and Parks) the cape and horns of the mountain goat which he _legally_ killed, but a part of which he was convicted of wasting contrary to the cited statute.

Huebner argues that only if the mountain goat was killed illegally may the District Court impose a forfeiture penalty.

Section 87-1-506, MCA, provides:

**Enforcement powers of wardens.** A warden may:
. . .

(4) seize game, fish, game birds, and fur-bearing animals and any parts of them taken or possessed in violation of the law or the rules of the department[.]

While it is true that Huebner killed the mountain goat legally, there is no question that he violated the law in the manner in which he took _only the head, horns, and cape_ and left the rest of the animal. Having failed to comply with the statutory requirement that he not waste the meat, Huebner is subject to the game warden's authority under § 87-1-506(4), MCA, to seize any parts of the animal. We hold that the District Court did not impose a penalty contrary to law.

7

As to the remaining issues raised by Huebner, we conclude that, under the circumstances of this case, our holdings on Issues I and II render them moot. Huebner took the stand in his own defense at trial. He admitted that he took only the hide, horns, and cape of the mountain goat, leaving the rest in the field. His defense was based on his position that the meat of the animal was no longer suitable for food by the time he was able to reach it the morning after he shot it.

We have determined under Issue I that § 87-3-102, MCA (1989), constitutionally prohibits the taking from the carcass of a game animal only the head, hide, antlers, tusks, or teeth, and abandoning the remainder of the carcass in the field as Huebner, by his own testimony, did in this case. Under Issue II we held that there is no mental state required for violation of § 87-3-102, MCA (1989). We conclude that Huebner's own testimony established all of the elements of the offense with which he was charged.

By his own admission, Huebner did not raise at trial the issues he argues on appeal concerning the oral instruction and absence of written instruction to the jury on proof beyond a reasonable doubt and the absence of instruction on the presumption of innocence. We conclude that because Huebner's own testimony established all of the elements of the offense with which he was charged, those issues, as well as the issues concerning the unconstitutionality of the limits on appellate review in § 46-20-

8

701(2), MCA, and references to his exercise of Fifth Amendment rights, could not have resulted in any prejudice to him.

> Error in giving or refusing instructions will not necessarily justify a reversal, when the evidence of the defendant's guilt is so clear and convincing the jury could not reasonably have found him not guilty.

People v. Genovese (Ill. 1979), 382 N.E.2d 872, cert. denied 444 U.S. 848, 100 S.Ct. 86, 62 L.Ed.2d 56. "No cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. (The constitutionality of that restriction on appellate review is not challenged.) Although in a different factual situation the other issues raised by Huebner may have merit, in this case they are immaterial.

Affirmed.

_____
Chief Justice

9

We concur:

_John Conway Harrison_

_William E. Hunt Sr._

_[signature]_
Justices

Honorable Thomas C. Honzel,
District Judge, sitting in
place of Justice Karla M. Gray

10

Justice Terry N. Trieweiler specially concurring.

I concur with the opinion of the majority.

Had the defendant requested an instruction on the burden of proof, and had it been refused, I would consider that refusal to be reversible error. Likewise, had the defendant unsuccessfully requested an instruction to the jury on his presumption of innocence, I would consider that reversible error. However, in this case, the burden of proof and presumption of innocence were totally irrelevant to the defendant's theory of defense. The conduct he was accused of was conceded. He simply disagreed that it was a violation of the statute he was accused of violating.

We do not have to rely on § 46-20-701(2), MCA, for the time honored principle that a party cannot raise on appeal those issues which it did not raise at the trial court level. However, the dissent contends that no trial court objection is necessary because the District Court's failure to instruct on the presumption of innocence is plain error and in violation of both the United States and Montana Constitutions. I would direct the dissent to the United States Supreme Court's decision in *Kentucky v. Whorton* (1979), 441 U.S. 786, 60 L.Ed.2d 640, 99 S.Ct. 2088, where they held that failure to give such an instruction is not even always error.

In the *Whorton* case, the defendant actually requested that the jury be instructed on the presumption of defendant's innocence. That instruction was refused by the trial court and defendant was

found guilty of numerous counts of robbery and other crimes. On appeal, he argued, as the dissent contends, that the refusal to give such an instruction denied due process in violation of the Fourteenth Amendment of the United States Constitution. In rejecting the defendant's argument on appeal, the Supreme Court held that:

> In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor [v. Kentucky* (1978), 436 U.S. 478, 56 L.Ed.2d 468, 98 S.Ct. 1930], such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial.

> The Kentucky Supreme Court thus erred in interpreting *Taylor* to hold that the Due Process Clause of the Fourteenth Amendment absolutely requires that an instruction on the presumption of innocence must be given in every criminal case. The court's inquiry should have been directed to a determination of whether the failure to give such an instruction in the present case deprived the respondent of due process of law in light of the totality of the circumstances.

*Whorton*, 441 U.S. at 789-90, 60 L.Ed.2d at 643-44, 99 S.Ct. at 2090.

I conclude that under the totality of the circumstances in this case, the District Court's failure to give the presumption of innocence instruction did not prejudice the defendant and did not violate due process. If under the *Whorton* decision, the failure to give such an instruction is not, under every circumstance, reversible error even when it is requested, failure to give such an

12

instruction certainly does not rise to the level of plain error when it has not been requested.

Furthermore, I find no prejudice from the District Court's reference to "preponderance of the evidence" in the context of its discussion on circumstantial evidence. The purpose of that discussion was not to explain to the jury the degree of proof required to convict the defendant. The purpose of that discussion was to point out to the jury that circumstantial evidence was as worthy of consideration as direct evidence. The phrases "preponderance of the evidence" and "proof beyond a reasonable doubt" are meaningless without the usual instructions to the jury explaining their meaning. No such instructions were given in this case, and the terms as used were neutral in terms of any impact they may have had on the jury. Therefore, while I agree that if the defendant had requested an instruction on the State's burden of proof he would have been entitled to one, I cannot conclude under the circumstances in this case that he was so severely prejudiced by the failure to give one that the failure to do so violated his right to due process and therefore, rises to the level of plain error.

For these reasons, I concur with the opinion of the majority.

_____
Justice

13

Justice R. C. McDonough dissents.

I would reverse and remand for a new trial. The defendant was deprived of his right to due process in violation of Section 17 of Article II of the Constitution of the State of Montana 1972, and of the Fourteenth Amendment to the United States Constitution.

At the very least, the trial court issued conflicting instructions on the burden of the State to prove defendant's guilt beyond a reasonable doubt. It also failed to give any instruction on the presumption of innocence. Even though the defendant testified at trial, it is the function of the jury to ultimately render a verdict of guilty or not guilty under proper instructions.

Section 26-1-403, MCA(1989), provides that in criminal cases, the court must instruct the jury that guilt must be proven beyond a reasonable doubt. At the instruction settlement conference the State submitted five proposed instructions. One of those instructions covered the defendant's presumption of innocence; that it remains with him throughout the trial; and that it is not overcome unless the jury is convinced beyond a reasonable doubt that the defendant is guilty.

The court stated it would give its written composite Instruction No. 1. At this point the State withdrew its proposed first five instructions. The court then stated it would give the State's sixth instruction which was a recitation of the statute that the defendant was charged with violating. This recitation was eventually given as Instruction No. 2. The defense offered only one instruction which is not relevant to this discussion, and the defense did not in any way object to the court's composite

**14**

Instruction No. 1.

The District Court read its written Instructions No. 1 and 2 to the jury, and then stated:

> THE COURT: The State of Montana must prove the elements of this charged offense to your satisfaction beyond any -- beyond a reasonable doubt. And another matter, when you go to the jury room, you will select one of yourselves as the foreman or foreperson. And they'll take charge of your discussions and you will discuss the matter.
> I've given you a verdict form, which will be in this little envelope. which you will have with you along with a copy of the instructions. And remember, this being a criminal case, all six of you must agree on the verdict. Now, I'm going to recognize the State for closing argument.

No where in the court's written instructions is there an instruction covering the presumption of innocence. As to the burden of proof the only mention is as follows:

> Now some law on evidence and witnesses.
> There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence -- such as the testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.
> As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

The oral instruction stated that the elements of the charged offense must be proven beyond a reasonable doubt. It is in conflict with that part of the court's written Instruction No. 1 that states that the law simply requires the jury to find the facts in accordance with the preponderance of all the evidence in the case. Nothing could be more contradictory as to the burden of proof. The general rule is that contradictory instructions are

15

sufficient to reverse the judgment. State v. Sloan, 22 Mont. 293, 56 P. 364; State v. Keerl, 29 Mont. 508, 75 P. 362; and State v. Fuller, 34 Mont. 12, 85 P. 369. This rule should be applied in this case.

If the jury remembered the oral instructions in its deliberation and considered it along with the written instructions, it would be impossible to tell which one the jury applied to the evidence. They could assume both were correct and pick one. If they applied the written one, it would clearly be error. The giving of the preponderance instruction or allowing the jury to select between the two is erroneous and conflicting. Given this clear error, a discussion of the emphatic effect of the clearly erroneous instruction being in writing and the other partially correct instruction being oral is not necessary.

The failure of the court to properly instruct on the presumption of innocence and the burden on the State to prove the defendant guilty beyond a reasonable doubt is clear error and violates due process. The requirement of the court to instruct on the presumption of innocence and the burden of proof is fundamental in our criminal justice system. If it is not given, even though the defendant did not object, the judgment is reversible. As stated by Justice Brennen in the opinion In re Winship, 397 U.S. Reports, 358, 363:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence--that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our

criminal law." Coffin v. United States, supra, at 453. As the dissenters in the New York Court of Appeals observed, and we agree, "a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." 24 N.Y. 2d, at 205, 247 N.E.2d, at 259.

The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. As we said in Speiser v. Randall, supra, at 525-526: "There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value--as a criminal defendant his liberty-- this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt." To this end, the reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue." Dorsen & Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).

Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

17

This Court has expanded on this doctrine. In State v. Harrison, 23 Mont. 79, 57 P. 647, this Court held that in addition to an instruction on reasonable doubt there must also be an instruction on the presumption of innocence. See also State v. Williams (1979), 184 Mont. 111, 601 P.2d 1194. Harrison quotes Justice White in Coffin v. U.S., 156 U.S. 432, 15 S.Ct. 394, as follows:

> "The fact that the presumption of innocence is recognized as a presumption of law, and is characterized by the civilians as a presumptio juris, demonstrates that it is evidence in favor of the accused; for, in all systems of law, legal presumptions are treated as evidence giving rise to resulting proof to the full extent of their legal efficacy. Concluding, then, that the presumption of innocence is evidence in favor of the accused introduced by the law in his behalf, let us consider what is 'reasonable doubt.' It is of necessity the condition of mind produced by the proof resulting from the evidence in the cause. It is a result of the proof, not the proof itself; whereas the presumption of innocence is one of the instruments of proof, going to bring about the proof, from which reasonable doubt arises; thus, one is a cause, the other an effect. To say that the one is the equivalent of the other is therefore to say that legal evidence can be excluded from the jury, and that such exclusion may be cured by instructing them correctly in regard to the method by which they are required to reach their conclusion upon the proof actually before them; in other words, that the exclusion of an important element of proof can be justified by correctly instructing as to the proof admitted. The evolution of the principle of the presumption of innocence, and its resultant, the doctrine of reasonable doubt, makes more apparent the correctness of these views, and indicates the necessity of enforcing the one, in order that the other may continue to exist. Whilst Rome and the medievalists taught that, wherever doubt existed in a criminal case, acquittal must follow, the expounders of the common law, in their devotion to human liberty and individual rights, traced this doctrine of doubt to its true origin,--the presumption of innocence,--and rested it upon this enduring basis. The inevitable tendency to obscure the results of a truth, when the truth itself is forgotten or ignored, admonishes that the protection of so vital and fundamental a principle as the presumption of innocence be not denied,

when requested, to any one accused of crime."

In the case before us, no instruction covering the presumption of innocence was given either orally or in writing. Even though the absence of such instruction was not objected to or brought to the court's attention, it was clear error for the court not to give it. On the basis of the sound reasoning set forth by Justice White, in <u>Coffin</u>, I conclude that the failure to give an instruction on the presumption of innocence also violates Section 17 of Article II of the Constitution of the State of Montana 1972 (due process clause), and the Fourteenth Amendment to the Constitution of the United States.

I am well aware of redesignated § 46-20-701(2), MCA (1991), which was amended to read as follows:

> Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. No claim alleging an error affecting jurisdictional or constitutional right may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:
>
>> (a) The right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
>>
>> (b) The prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or
>>
>> (c) Material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

However, the plain error doctrine was first considered and

applied by this Court in Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. This is within the Court's constitutional prerogative under Article VII, Section 2 of the 1972 Montana Constitution, which provides in part:

> **Section 2. Supreme Court jurisdiction.** (1) The Supreme Court has appellate jurisdiction and may issue, hear, and determine writs appropriate thereto. It has original jurisdiction to issue, hear, and determine writs of habeas corpus and such other writs as may be provided by law.
>
> (2) It has general supervisory control over all other courts.
>
> (3) It may make rules governing appellate procedure practice and procedure for all other courts admission to the bar and the conduct of its members. Rules of procedure shall be subject to disapproval by the legislature in either of the two sessions following promulgation.

If one considers the Halldorson case to be an enunciation of a procedural rule, this would be subject to the legislative veto, and in application of the last sentence of Section 3, a disapproval by the legislature would have to occur in the 1979 or 1981 legislative session. This did not happen. But there is a more serious question as to whether or not the legislature has the right to initiate procedural rules, contrary to this Court's decisions, as they have done here. They have essentially not disapproved the Halldorson rule, they have initiated an amended procedural rule by putting limitations upon it.

It cannot be questioned that what can be heard on appeal in a criminal case when it is not objected to in the trial court, is a procedural rule. The legislature has the power to disapprove, but it cannot initiate. The legislature, in limiting the application

20

of the plain error doctrine in criminal cases, has usurped a function which is reserved to the judicial branch. In the specific case before us, the failure to instruct on the presumption of innocence in considering the defendant's guilt or innocence, and the failure to instruct on the burden of proof beyond a reasonable doubt, is a violation of fundamental and substantive rights of the defendant by the government, and violates both the due process clause of the Montana Constitution and that of the United States Constitution. If such instructions are not presented by the state or the defendant, it is the duty of the trial court to so instruct. To say that we cannot consider such a fundamental and substantive violation of a defendant's rights on appeal due to the failure to object at the trial level is the erection of procedural barriers by the legislature designed to impede the judicial function in interpreting the Constitution. I would therefore hold that § 46-20-701(2), MCA (1991), specifically violates Article VII, Section 2 of the Montana Constitution, and is a procedural barrier that the legislature cannot erect, when those procedural barriers are designed to impede the judicial function in the review and interpretation of fundamental rights as set forth in the Constitution.

I would reverse and remand for a new trial.

_____
                                Justice